Good morning, Your Honors. May it please the Court. The jury issued inconsistent verdicts in this case. It ruled for Biomet on strict liability, but then it ruled for Plaintiff on negligence. Now, this Court has a duty to harmonize the verdicts if it reasonably can do that. But these verdicts can't be reasonably harmonized. They're truly inconsistent, which means the Court needs to take some action, grant some remedy to remove the inconsistency. In this case, that means the negligence verdict must be vacated. The reason is that Plaintiff didn't challenge the strict liability verdict. No matter what happens, that's final stance. It can't be challenged now. The only way to address it— If it's possible for these verdicts to be that conflicting, why wasn't there some objection to the instructions, something to put before the Court prior to the rendering of the verdicts to indicate that there was this potential for, as you describe it, irreconcilable decisions? Yeah, Your Honor, three of the four permutations of the results here would have been perfectly consistent. The jury could have ruled for Biomet on both. It could have ruled for Plaintiff on both. It could have ruled for Plaintiff on strict liability and Biomet on negligence. The only one of the four it couldn't do is this one. And so in a situation like this, there's real value in actually getting the jury verdicts and all the claims to preserve it for the appellate record. And then it could move a lot of the challenges. There is no rule saying that you have to absolutely prevent a jury from being unable to follow their correct instructions. This Court in the McIntyre case granted judgment as a matter of law when the verdict form allowed both separate verdicts on strict liability and negligence. It did that under Missouri law. The Second Circuit ordered this relief in the Kosminska v. Polaris case. Exact same thing, strict liability and negligence. Those are the closest factually on point. This Court's very recent decision in the Rigel case, which is an employment discrimination case, it's a 2019 case, 935 Fed Third 633. The District Court discussed this. It was an employment discrimination case where there are verdicts against first the employee of the county and then the county. There wasn't a prevention on the jury verdict form of doing that either. So the short answer, Your Honor, is that both parties here had risk. If the jury verdict went this way, both parties chose to engage in that risk. And when that happens, the Court reviews it after the fact for inconsistent verdicts. And, you know, the fact that we have all of these cases in the Courts of Appeals on inconsistent verdicts stands for the proposition that a verdict form preventing that from happening, saying if this, then you can't do that, isn't required. Because if it were required, you'd never have one. What is the irreconcilable conflict in these verdicts? The irreconcilable conflict, Your Honor, is that under Missouri law, a claim for negligent design requires proof of a defect and causation. That's undisputed. And the courts have held that many times in Missouri. In fact, the Supreme Court has held that. And here, the jury's verdict on strict liability meant that the jury concluded the plaintiff failed to prove either defect or causation or both. Why? Because that's the only reasonable way they could rule for biomet on strict liability. There are four elements to strict liability in Missouri law. There's defect, there's causation. Those are the two that we challenge. The other two are the M2A magnum was sold in the ordinary course of business. Everybody agrees that happened. And then the only other element was that it was put to a use that was reasonably anticipated. Counsel, can two jury verdicts be legally inconsistent where the claims have different elements? Do they have to be categorically inconsistent? The analysis, Your Honor, is conducted on the record before the court. And it's constrained by what a jury reasonably could do. You know, the premise of the civil system is that reasonable, juries have to do what's reasonable. Rule 12 is a reasonableness standard. Summary of judgment, Rule 56 is reasonableness. Judgment as a matter of law is reasonableness. So that's the constraint here. And so, you know, the Missouri Supreme Court, in the Johnson v. Auto Handling case, held that negligence and strict liability aren't necessarily, in all cases, inconsistent. That's what that case stands for. The defendant in that case did not raise the argument, and the court did not address it, on the record before it. A jury reasonably couldn't distinguish between them. And that's the situation here, Your Honors, because at trial, Instruction 9 to the jury, which said that you don't have to guarantee that the product always works, Instruction 9, which was addressing both strict liability and negligence, said, and I'm quoting, what Biomed is required to do is sell a product that is free from defective in unreasonably dangerous conditions. That's Appendix 86. It said that for both claims. It equated the two elements. And the plaintiff did the same thing in closing argument. In plaintiff, both sides went through strict liability first, and they went through the elements of defect and causation, and then they addressed negligence. Here's what plaintiff said when it got to negligence. I'm reading from the transcript. The good news about this one, negligence, product defect, is it's going to be faster because we've covered many of the elements that are in that. Number one, Biomed designed the M2A Magnum. Check. Number two, the M2A Magnum was in a defective condition, unreasonably dangerous. Check. That's docket 357. It's the transcript of closing at 11718. That is literally all the plaintiff said about defective condition. But isn't it a different thing to say that the parties aren't engaged in a dispute, maybe an argument about a particular element, and having a separate stipulation? Like members of the jury, the parties agree. We stipulate. You don't even have to go to element X. But I don't really understand that that's what happened here. And so I kind of feel like the district court had some concern about going back and looking and sort of getting into the mind of the jury as to how they actually assessed those elements. So can you help me out there in that distinction? Absolutely, Your Honor. I agree. There was no formal stipulation on the reasonably anticipated use. The plaintiff said, like I said, spent eight lines and said it's easy. Biomed's counsel. Well, of course they're going to say it's easy, right? Yes, of course. But here's the important thing, and this one would get held against us if we tried to challenge this on appeal. We have the cites at page 16 of our brief. Our counsel, my colleague, John Manler, who tried this, got in closing and said, there are only two things you need to decide, defect and causation. We have the cites here. And then he put up the verdict form, the elements of the claim in front of the jury, and he highlighted them. And he only highlighted defect and causation. He didn't highlight ordinary use. He didn't highlight reasonably anticipated use. He made no argument. We're bound by that. But here's the bigger point, Your Honor. Every time a court of appeals on review assesses what a jury could reasonably do, it wasn't stipulated. Otherwise, there'd be no dispute. So every time there's a review for sufficiency of evidence as a matter of law, it's in dispute. So this idea that we had to stipulate in order to preserve this argument is unsupported by the rules. And think about this. Go ahead, Your Honor. Well, I was wondering how that dovetails in with your position on the jury instructions. Because you're saying, well, you don't have to anticipate that the jury would not follow the instructions as a matter of law. But that's not really what I see here. I sort of see you left all of these in play for the jury. Everybody agreed beforehand that your option number four would be, in your minds, inconsistent. But nobody prevented that. And that's not really a matter of law. That's a matter of how the facts and the evidence come out, which you sort of left for the jury. And why aren't you sort of having to kind of now live with what you presented to the jury as option number four? Because you didn't instruct them properly. No, they were instructed entirely properly, Your Honor. Well, that's not what you're saying now. You're saying now that there is nothing that could have, based on the way the case was presented before they were instructed, there was nothing that would have allowed them to come up with option number four. Maybe I'm misunderstanding your argument. No. We said at the time, and plaintiffs said at the time, these are the correct instructions under Missouri law. This isn't something that we came too late. We said it at the time. And I want to address directly what you're saying, Your Honor. Because this goes to a preservation argument. So our argument before Your Honors is for judgment as a matter of law on negligence for failure of proof on the elements of defect and causation. We preserved that argument by presenting it to the court before the case was submitted to the jury. As soon as the verdicts came back, we remade it before the jury was discharged, saying now we have further proof. We have the jury's strict liability for it. And we repeated it afterwards. But is the verdict proof? It is if it's unchallenged, Your Honor. And that's where we are now. It's further support of our argument on our judgment as a matter of law claim. And then we renewed it. To that point, as I understand the way you're arguing, it's just a matter of conclusive based on the outcome of the verdict. Okay. But how do you distinguish the Johnson decision in Missouri, Johnson v. Auto Handling, that points out the distinctions between the elements of negligence and strict liability and that they aren't conflicting necessarily? I agree. It said they aren't conflicting necessarily, Your Honor. And that's the whole point. The defendant in that case made a general argument. It said whenever there's a verdict for the defendant on strict liability, negligence is always wiped out. Missouri Supreme Court said no, because there are different elements. But on the element that mattered here, it literally in the next paragraph of the opinion after it held that, it said here the, I'm quoting, negligent and strict liability design defect both depend on proof of the inadequacy of the design. And so we've cited a number of cases, including another one by our very able trial judge here, the McMahon case, where once there was a finding of no defect, there was summary judgment on both strict liability. But how do you know on what basis the jury made its conclusion? Because the jury can only do what a reasonable jury could do. And a reasonable jury here could not find ordinary course met or reasonable use met. It couldn't find that. Under Missouri law, it couldn't find that under the instructions. It couldn't find that because both sides said it on there. But I want to go back to this. This is an issue preservation. The rule on objecting to jury instructions is you only have to object to the jury instructions to preserve an inconsistent verdict if the instructions were wrong. They weren't wrong here. And they could have been applied consistently here. The other final point is that on, Your Honor, on the conditional, the district court said that in order for Biomet to preserve its argument on negligence and defect and causation, it had to move against itself on a different claim, on a different element. No rule requires that for issue preservation. No case has ever held it. And it's not the law. I'll reserve the remainder of my time for rebuttal, Your Honor. Thank you, Mr. Van Orn. The appellee splits its time. And we'll hear first, once the podium is prepared, from Mr. Yackel. Good afternoon, or good morning, I guess. May it please the Court, just as a matter of housekeeping on the time split, the appellants have raised an issue as far as remitter that alleges that the egregious misconduct of the trial counsel warrants a new trial. And Mr. Darren Shanker is here. He is my co-counsel in this case. He was lead trial counsel there. We reserve time in case the Court had questions regarding just that issue. And if it comes up and the Court has questions to Mr. Shanker, I reserve a few minutes at the end of the argument for the Court to ask those questions, if it wishes to do so. That being said, I'll move on to the argument. The notion that Biomet is claiming the instructions are correct, how can they be correct if the verdict form says if you find for Mrs. Bays on either claim, you are to award damages? I think counsel says that, well, the answer to that question is that the jury has a duty to be reasonable. Well, the jury has given out, first of all, the way you evaluate an instructional error is to look at how the jury was instructed. That's the Kwan case, SEC versus Kwan. And that's where we start. The jury was given instruction that has a distinct element for strict liability, which is the product was used in a reasonably anticipated manner. Biomet takes the position that that element was conceded, taken away from the jury. No reasonable jury could find that element. Under Missouri law in the Nestle Road case, the Missouri Supreme Court says that really what reasonably anticipated use really falls under the umbrella of causation, at least as far as strict liability law in Missouri goes. It's not an element at all for a negligent design defect case. It's just not. If you look at the MAI instructions that were given, it's not listed there. So that's sort of the start and the end of the analysis is unless that element was stipulated that the jury could not find it. What was the evidence that the jury could consider on that? Certainly. There was a lot of evidence. And actually, they argued in closing argument. They just didn't use the term reasonably anticipated use. Throughout the trial, the defense was that Ms. Bay's surgeon put the hip cup in at the wrong angle. There's a surgical technique that Biomet supplies to its surgeons that it has a 40 to 45 degree angle as the recommended surgical technique. There's some testimony from other doctors that say there's a safe zone of 30 to 50 degrees in that angle. And Biomet put on evidence that the hip cup was over 60 degrees, which led to more edge loading, leading to more wear, leading to more metal ions, which caused devastating injuries to Ms. Bay's. So their argument is, and their experts testified that, and they recited this, reminded the jury of this testimony in closing argument, the argument of causation, important causation, is they said the angle was, the experts said it was, quote, beyond what was recommended by Biomet. Outside of what any surgeon would expect. And that the left hip cup was not in its, quote, intended position, which prevented the device from, quote, functioning the way it was designed to function. So it wasn't being used in a reasonably anticipated manner. What you're saying is that Biomet actually put on evidence to suggest that it wasn't used in a manner reasonably anticipated, but just sort of argued it in terms of whether the product itself caused the harm. In other words, you think that the jury could have used that evidence for both elements? Absolutely. As I mentioned, the Nassau Road case says that reasonably anticipated use and strict liability claims is really an aspect of causation. And Biomet says that's what we were arguing. We were arguing causation, the issues of product defect and causation. We were arguing causation. I agree. That's exactly what they were doing, which is a reasonably anticipated use. So they were making that very argument to the jury, and the jury could have reasonably found under the strict liability verdict director that the surgeon, Ms. Bay's surgeon, installed it in the wrong way. That's not a reasonably anticipated use. That element doesn't exist in the negligence verdict director. It just isn't there. So under the Kwan case, you determine that the verdicts are inconsistent based on how the jury's instructed. So unless that element, reasonably anticipated use element, is excised from the case, which I'll give Ron Biomet credit. They're trying to make it disappear. They're trying every means necessary to make it disappear. It reminds me of David Copperfield trying to make the Stairs of Liberty disappear. They go to great lengths. But it's there. They're arguing it. They're arguing nonstop. They're putting on a lot of evidence. That was their defense. The right hip was less damaged. They both had magnum implants by Biomet and Ms. Bay. She had a right and a left implant roughly at the same time. The right implant did a little bit better than the left. The left was terrible. And they said, well, the reason why is the left hip cup was put in a size 60-plus degree angle, way beyond the surgical technique, way beyond anything Biomet would have expected. But the right hip cup was in roughly the right position or was in a better position. That's why the right hip was okay. So they're blaming her surgeon for this. And the jury presumably found that because they entered a verdict for Biomet in the strict liability claim. And it's presumed, on the standard view that we're under here, it's presumed that the evidence was found in the light most favorable to that verdict. And that verdict is it had to be proven that there was a reasonably anticipated use. So the fact that Biomet made the argument and the jury believed it, okay. But then there's the negligence claim that is still out there that doesn't have that element. And so this whole inconsistent verdicts, it's fairly simple. How to reconcile these split verdicts. It happens all the time. There's cases, Babcock's case, Babcock case versus GM that we cite, Jarvis, which we cite. And frankly, the notion, this is an instructional error that should have been dealt with. If they felt that the verdict director or the jury couldn't return a verdict for Mrs. Bay's on negligence, if it found for them on strict liability, it could have proposed an alternative instruction to prevent it. It could have objected to the verdict form. Didn't do any of those things. Nothing the jury did, you know, they didn't have to wait to see what the jury did. This isn't a special verdict form where the jury might have made inconsistent findings. They couldn't have figured it out until after the fact. The jury just found for Biomet on one claim and for Mrs. Bay's on the other. That's, it's perfectly consistent under Missouri law. The cases they cite, McIntyre was this court from 1978. I've read the case. Strict liability, and that didn't require reasonableness to state a use. It wasn't mentioned. That wasn't, so that was not a distinct element in that case. Plus, it predates the Johnson versus Auto Handlers case. So, it just, which Missouri Supreme Court announced. In that case, the jury returned a verdict for the defendant, manufacturer in the strict liability claim, for the plaintiff in the negligent design claim, was appealed. The Supreme Court says there was an error in the negligence verdict, negligence verdict director for negligent design, and they sent it back even when the jury had already found against the plaintiff on strict liability. So, there's no inconsistency under Missouri law. At least, at least as they were instructed here. We think the instructions were proper. I just don't think Biomet does now, and they're saying it now because it suits their interests. That's, that's kind of how I would handle the Kozminka case. Under New York law, that's all based on New York law. And if you read Jarvis and Kozminka, it seems to me that the way the jury is instructed in New York is just different than it is in Missouri. So, that case law really isn't amped here. So, that's what I would suggest there. I'd like to turn to the standard of care argument for a moment. Just to address that, it's really the same issue. It's a submissibility argument. They're arguing that Mrs. Bates didn't make a submissible case because after, because she failed to offer expert testimony establishing a standard of care for a medical device manufacturer that they breached the higher standard of care. And if Biomet met the standard, had Biomet met the higher standard of care, it would have chosen a different design. So, what this really is, is it's a instruction to a jury, a jury instruction challenge masquerading as a submissibility argument. I understand why they're not making a jury instruction, right? Because they've been complaining about the instructions before the verdict. Now they're complaining about the instructions really afterwards. And the reason it's an instructional issue is, in Missouri, the MAI defines a standard of care. They agreed to this instruction. In our briefs and in our separate appendix, we put forth all the proposed instructions from being the case. All sides agreed to this instruction throughout without deviation that the ordinary careful person's standard of care applies. They agreed to it. The jury was instructed to that. The court gave the instruction they requested. The jury got it, applied it, and they entered the verdicts that they did. The reason it's instructional error is, I'll cite Hickman v. Branson Ear, Nose, and Throat, a Missouri Supreme Court case from 2008. That was a medical malpractice action where the instruction given was the professional standard of care, which is MAI 1106. In our case, it was MAI 1105. There, the Supreme Court says, to make a submissible case, the plaintiffs needed to introduce that the defendant, in the words of MAI 1106, the heightened standard of care instruction, in the words of MAI 1106, which was given as instruction six in this case, that the defendant, quote, failed to use that degree of skill and learning ordinarily used under that or similar, circumstances by members of the defendant's profession. And then that instruction, quote, which sets forth the legal standard, provides a basis for questioning the plaintiff's expert as to the standard provided as a basis for questioning, I'm sorry, MAI 1106, which sets forth the legal standard, provides a basis for questioning the plaintiff's expert as to the standard of care and how that standard was breached by the defendant's surgeon. They didn't ask for a higher standard of care. We pointed out, and that's what Judge Clark said. He said, you didn't ask for it. You're trying to shoehorn this case into a professional negligence case after the fact. There's also an MAI 1110, which seems to be exactly the instruction they think they should have gotten. They never requested it. So now they're coming up and they're saying, well, we should get a new trial. Actually, Mrs. Bates' claim should be tossed because we didn't ask for the instruction we think we should have gotten. And that's, it's preposterous to me that they should be able to get a second bite of the apple like that when they got the instruction they asked for. So, again, this is, the Kwan case says, basically, it's Biomed's challenge is the standard of care the jury instructed to propose can't complain because the court gave it and the jury applied it. And I would cite Kwan for that proposition. It's invited error. They asked for it and they got it. An alternate basis for waiver is they didn't make the submissibility argument in their 50A motion. They raised it in their 50B motion for the first time. They say we waived that waiver by not objecting to it in our response to the 50B motion. I point out to the court that Mrs. Bates invoked the principle that Biomed was precluded by Rule 50B from advancing arguments and that's not included in its pre-verdict form and that's in supplemental appendix page 55 and 58. That's Biomed's supplemental appendix. This court's decision in the Hazell case doesn't, I think, go that far. The deviation there was that the directed verdict motion wasn't filed at the close of evidence. Therefore, in that case, the plaintiff got the opportunity to cure the alleged evidentiary defect. Here, we had no opportunity to cure. That's the whole point of requiring them to make the argument before the case is submitted to the jury to give the opposing party the opportunity to attempt to cure the supposed defect in evidence. So to the extent that we waived that issue, I'd refer the court to the Anchor Fish v. Tory Harris case out of the Second Circuit where they said that if the interest of justice requires it, that you can excuse the non-moving party's waiver, and I think those circumstances apply here. So I see my time is running. If the court has any questions of Mr. Shanker, he's available now. If not, I'll continue and wrap up. Seeing none, I'll continue. I'll just move on quickly to the remitter issue. The evidence in this case is stark, overwhelming, that Mrs. Bays had a catastrophic injury. She's had six revision surgeries, 12 locations, left hip. There's soft tissue injury. She'll never get that tissue back. The doctors who did the first revision said it looked like a hand grenade went off in her hip. Dislocations occur whenever she does basic tasks or when she's done basic tasks in the past, rolling over bed, picking up remote control, sitting in the bleachers at her granddaughter's volleyball game. She describes the pain of dislocations worse than childbirth, 10 out of 10. She says she's not a screamer. She prays. She waits for the paramedics to show up to give her narcotics to relieve the pain. She now is in a fully constrained left hip, which restricts her movement but provides some stability. But whenever there's a dislocation, if I have to have surgery, there's almost a guarantee she'll experience more dislocations in the future. She lives in constant fear of the next dislocation and trip to the hospital. So it's disfigurement, permanent damage. There's no solution for her. This award was utterly just and reasonable based on her severe and permanent injuries. Thank you. I'd ask that the judgment be affirmed. Thank you, Mr. Bianchi. Your Honors, I want to focus on the element of reasonably anticipated use because I hear that's how counsel is trying to reconcile these verdicts. The first thing counsel said is that reasonably anticipated use is just causation under strict liability. It's the first time I've ever heard that argument. I didn't see it in the briefs. I don't see it in Missouri law. And it's inconsistent with these instructions. Instruction number 10 on strict liability has reasonably anticipated use as element three and causation separately as element four. The parties argued them separately. Not just my colleague, but plaintiffs argued them separately. They are separate. So could a reasonable jury have found that this was not a reasonably anticipated use? No. Under Missouri law, misuse is a reasonably anticipated use. Plaintiffs argued that below. We have the site at page 11 of our reply at Supplemental Appendix 2. They argued that. They're trying to switch positions now. Unreasonably anticipated use would be like using a hip as an ankle. You know, the one case that found not reasonably anticipated use is a lawn tractor where they built a box on the fender for their dog to sit and then had a two-year-old sitting there. That was not a reasonably anticipated use. Using a hip implant as a hip implant is a reasonably anticipated use. And that's exactly what plaintiffs' counsel said in closing in the eight lines, total lines he spent on this issue. That cannot be reconciled on reasonably anticipated use. That means there's a conflict because there's a defect or a causation failure, and that wipes out both. So on preservation, the rule of this Court is that if you're going to rely on inconsistent verdicts, you preserve it. If you make the objection and argument as soon as the verdicts come back and before the jury is discharged. It's undisputed we did that here. There's no requirement to use a verdict form that absolutely boxes out a jury when there are multiple ways it could consistently apply the law. Both sides took that risk. I think plaintiffs wanted to get in the evidence of conduct that negligence allowed. This wasn't a one-sided thing. This wasn't one side doing it. You hold both parties to the choice, and you review it afterwards for reasonableness. It's preserved. I really want to end, though, by saying it's natural in a case like this to feel sympathy for Mrs. Bays. I want to say directly on behalf of my client, we feel profound sympathy for her. But no product is 100% successful, and you wouldn't want a rule that only allows products that are 100% successful. In this case, the record showed, the evidence came in showing that after 12 years, 95% of these hips were still there, which means 95 out of 100 people who otherwise would have had debilitating hip pain got relief from this product. It's a good product. That's why, viewing the evidence, the jury came back and found that she didn't prove a strict liability claim. That finding compels judgment for Biomed on the negligence claim, too. Thank you, Your Honors. Thank you, Mr. Van Oort. Thank you also, Mr. Yackel. The court appreciates both counsel's participation and argument this morning. We'll take the case under advisement.